966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David A. BRYANT and William W. Ackison, Defendants-Appellants.
 Nos. 91-3433, 91-3434.
 United States Court of Appeals, Sixth Circuit.
 June 12, 1992.
 
 Before RYAN, BOGGS and BATCHELDER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant David Bryant appeals his convictions on five counts of deprivation of civil rights under color of law, in violation of 18 U.S.C. § 242, and defendant William Ackison appeals his convictions on two counts of tampering with a witness, in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(c)(2). Both defendants contend that their convictions were not supported by sufficient evidence and should therefore be reversed. After carefully reviewing the record before us, we conclude that their arguments are without merit. We therefore affirm their convictions.
 
 I.
 
 2
 Both Bryant and Ackison were members of the Ironton, Ohio Police Department at the time of the conduct underlying their convictions. Bryant was a patrol officer and Ackison was the chief of police.
 
 
 3
 Bryant was indicted on five counts of deprivation of civil rights, in violation of 18 U.S.C. § 242. Two of the counts alleged, in addition, that the acts of deprivation resulted in bodily injury to the victims. Ackison was indicted on two counts of tampering with a witness, in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(c)(2). In one of those counts, the indictment alleged that Ackison knowingly intimidated and threatened and attempted to intimidate and threaten officer Christopher Bowman with the intent of delaying or preventing him from testifying in an official proceeding. 18 U.S.C. § 1512(b)(1). In the other count, the indictment alleged that Ackison intentionally harassed and attempted to harass officer Steven Hackworth to prevent him from reporting to the FBI any offense Bryant might have committed. 18 U.S.C. § 1512(c)(2).
 
 
 4
 Bryant and Ackison pled "not guilty" and the case proceeded to trial before a jury. The government's evidence against Bryant consisted chiefly of the testimony of Bryant's fellow police officers. These officers and others testified concerning five incidents where Bryant allegedly used excessive force in the handling of police prisoners.
 
 
 5
 The first incident occurred in the spring of 1988, when patrolmen Jerry Leach and Jim Sargent of the Ironton Police Department arrested Jimmy Fuggett for intoxication and brought him to the Ironton City Jail. Officer Leach testified that while he was collecting Fuggett's personal property, defendant Bryant, who until this point was not involved in the arrest of Fuggett, appeared on the scene and grabbed and threw Fuggett to the floor. When Fuggett failed to get up, Bryant kicked him in the back and dragged him into the cell. Officer Sargent and Claudia Holland, the dispatcher on duty at the time, corroborated officer Leach's account of these events. Furthermore, both Leach and Sargent testified that they perceived no justification for Bryant's use of force on Fuggett.
 
 
 6
 The second incident took place while Bryant was on a "cruise line detail" with patrolman Christopher Bowman. Bowman testified that while they were on this detail, Bryant called attention to a car travelling in the opposite direction and told Bowman that he was going to stop the car and "screw with the guy." Bowman further testified that when the driver, one Don Roe, refused to get out of the car, Bryant reached through the window, grabbed Roe by the hair, and tried to pull him out through an eight-inch gap in the window, jerking him forcefully three or four times. At this point, Bowman intervened and got both Roe and a passenger out of the car by way of the door on the passenger's side. According to Bowman, Roe did not pose a threat to Bryant's safety. He made no sudden movements; nor did he attempt to reach for anything. Bowman also testified that Bryant often told fellow officers that he would not take verbal abuse from suspects and would "knock their heads off" if they so much as opened their mouths.
 
 
 7
 The third incident occurred while Bryant and patrolman Lon Hilton were responding to a request for assistance with a disorderly drunk. When Bryant and Hilton arrested the man, his companion, Wendy Frazier, noisily demanded to know why he was being arrested. After she refused several orders not to interfere, Bryant arrested her and escorted her to his patrol car. According to Hilton, Frazier was loud and belligerent but acceded to Bryant's order to get in the car. At one point, Frazier grabbed for the door, and Bryant responded by striking her in the face with his closed fist. Hilton further testified that Bryant refused his help in getting Frazier into the car and hit Frazier in the face a second time. Frazier corroborated Hilton's account of the incident.
 
 
 8
 The fourth incident occurred after officer Bryant brought one Greg Hall to the Lawrence County Jail for booking. A trustee, Edgar Ray Aldridge, was standing near the jail kitchen when Bryant and Hall arrived. According to Aldridge, Hall was uncooperative during the booking process and frequently swore at the officers, including Bryant. Aldridge testified, however, that he did not see Hall do anything that was physically threatening to the officers. Aldridge further testified that while Hall resisted the officers' attempts to take his effects, Bryant struck Hall on the head with a nightstick. Another witness, jailor Billy Winters, corroborated Aldridge's account of these events. Winters further testified that he notified dispatch to get an emergency medical unit. Hall was eventually taken to a hospital, where he received eleven stitches for the laceration on his head.
 
 
 9
 The incident with Greg Hall was the direct cause of the FBI investigation into Bryant's conduct. Following the incident, Hall called the FBI office in Cincinnati, and his complaint was forwarded to Special Agent Leslie Bond, who commenced an investigation of the matter as well as other incidents involving officer Bryant.
 
 
 10
 The final incident underlying Bryant's indictment occurred shortly after the FBI began its investigation. On this occasion, officer Bryant was alone when he encountered an intoxicated Gerald Dean Bruce. Several witnesses, including an off-duty police officer, testified that Bryant chased down Bruce and struck him on the head three times with a nightstick. These witnesses also testified that Bruce was far too drunk to be a credible threat to Bryant.
 
 
 11
 Bryant testified in his own defense and contradicted the testimony of the government's witnesses, claiming either that he did not use the force they accused him of using or that it was justified by the behavior of the victims. In addition, with respect to some of the counts, he presented the testimony of other witnesses to support his view of these events.
 
 
 12
 About the same time as Bryant's last incident, FBI agent Leslie Bond contacted the Ironton Police Department concerning his investigation of Greg Hall's complaint about Bryant's use of excessive force. Shortly thereafter, defendant William Ackison, the Ironton Chief of Police, learned of Bond's investigation and called officer Christopher Bowman into his office. According to Bowman, Ackison accused him of "leaking" information to the FBI. Bowman further testified that over the next few months Ackison called him into his office several times to make similar accusations regarding the FBI's investigation of Bryant.
 
 
 13
 During the course of his investigation, FBI agent Bond informed Ackison that he would be interviewing all the officers and asked for their home phone numbers. In response to Bond's request, Ackison wrote a memorandum to the entire department, posted it on the bulletin board, and delivered it to all personnel. The memorandum said:
 
 
 14
 Les Bond of the FBI will be conducting an investigation concerning Ptl. Bryant. He will be contacting each person of the department during this week.
 
 
 15
 This is concerning any comments, gossip, heresay [sic], etc. on Ptl. Bryant.
 
 
 16
 No personnel of this department has to talk to Les Bond if they do not wish to.
 
 
 17
 Several members of the police department testified that they interpreted this memorandum to mean that Ackison did not want them to speak to the FBI. Officer Bowman testified that he perceived the message to be a direct threat to his job tenure. He further testified that after the memorandum was posted, Ackison called him into his office and explicitly threatened to have him thrown off the force if he cooperated in the FBI investigation.
 
 
 18
 Another officer, Steven Hackworth, who at one point had transported Greg Hall to the hospital, also testified that he interpreted Ackison's memorandum to mean that any officer who cooperated with the FBI would do so not because he had to but because he wanted to. At one point, Ackison asked Hackworth if he had read the memorandum. When Hackworth replied that he had, Ackison said that "[w]hen this thing's over, there is going to be a couple people caught in the middle." Hackworth testified that he believed that he was one of the people to whom Ackison was referring.
 
 
 19
 Ackison testified in his own defense and contradicted the testimony of both officers Bowman and Hackworth. In addition, defense witness Richard Hosey testified that he had spoken with Hackworth after the defendants were indicted and that Hackworth informed him that he had not been "intimidated" by the memorandum until the idea was suggested to him by counsel for the government. Hackworth denied this characterization of his conversation with Hosey.
 
 
 20
 At the conclusion of the government's case, the defense moved for a judgment of acquittal on all counts, but the court denied the motion. The jury found Bryant and Ackison guilty on all counts. The district court sentenced Bryant to 78 months imprisonment on counts one and two and to 12 months each on the remaining counts, with the terms to run concurrently, two years of supervised release, and an assessment of $175. The court sentenced Ackison to 51 months on the intimidation count and 12 months on the harassment count, to be served concurrently, two years of supervised release, and an assessment of $175.
 
 
 21
 The defendants' timely appeal to this court followed.
 
 II.
 
 22
 On appeal, the defendants contend that the district court erred in denying their motion for judgment of acquittal because the government failed to present sufficient evidence to support their convictions. When reviewing a denial of a motion for judgment of acquittal, we must view the evidence and all reasonable inferences in the light most favorable to the government and determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 23
 Under this standard, there was abundant evidence to support all of the convictions of both defendants. In essence, the defendants ask the court to give greater weight to their testimony than that of the government's witnesses. Such an argument, however, ignores our standard of review. When we review the sufficiency of the evidence to support a guilty verdict, we must consider all of the evidence in the light most favorable to the prosecution. Id.
 
 
 24
 Taking the evidence in the light most favorable to the government, we conclude that it was sufficient to support all of the convictions of both defendants. We therefore AFFIRM both convictions.